## THE ZACK CHANDLER.

*(District Court, N. D. Illinois. June 8, 1881.)*

1. CLOSE OF NAVIGATION — SEAMEN'S WAGES — RETURN TO PORT OF DEPARTURE.

   A vessel was laid up at an intermediate port by the close of navigation, and the seamen, who had been engaged at a higher rate of wages owing to the lateness of the season, were discharged. *Held*, under the circumstances of the case, that the seamen were entitled to be paid their wages up to the time of their discharge, together with the expense incurred by them in returning to the port of departure.—[ED.

   *The Lioness*, 3 FED. REP. 922.

In Admiralty.

*C. E. Kremer*, for libellants.

*Wm. H. Condon*, for respondents.

BLODGETT, D. J. This is a libel *in personam*, against the master and owners of the schooner Zack Chandler,

for wages and damages. The material facts, which are undisputed, are that, on the thirteenth day of November last, the libellants were shipped, at the port of Chicago, as seamen, to serve on said schooner at the rate of four dollars per day, for a voyage from Chicago to the port of Erie, in the state of Pennsylvania. No shipping articles were signed, and no stipulation made as to the rights of the respective parties in case the voyage should not be completed that season. The schooner left the port of Chicago on the thirteenth of November, on said voyage, with a full cargo of grain. She encountered very cold, tempestuous weather, and was finally driven into Green Bay, and, on the twenty-third of November, made the port of Escanaba, where she was laid up for the winter, and the libellants discharged,—it being conceded that it was unsafe to prosecute the voyage further that fall. The master offered to pay the libellants the wages earned, at the contract price per day, from the time of their employment up to the time of their discharge. They demanded that the expenses of their return to Chicago should be paid in addition to the wages, and this being refused, and the captain insisting that he would only pay the wages on condition of a full acquittance, they paid their own expenses to Chicago, and brought this suit.

It is conceded that the men worked faithfully and obeyed the commands of their officers during the time they were on board the vessel, and in all respects conducted themselves as obedient and capable seamen. It is now contended, on the part of the respondents, that, as that voyage was abandoned and no freight was earned, there is nothing due the libellants; while the libellants insist that, as a matter of strict legal right, they were entitled to stay upon the vessel until the completion of the voyage, whether it was that fall or the next spring, and to be paid the wages called for by their contract; that they were not to blame for the interposition of winter weather, and therefore had the right to complete their contract the next season, and that their employment continued until its completion.

Although the amount involved is not large, the principle in question is important, especially upon our northern lakes and rivers, where many voyages undertaken in the fall are liable to be delayed, by the close of navigation, until the ensuing spring.

This case does not come within the rule applicable to voyages which are abandoned and broken up by reason of shipwreck, or such marine disaster as makes the completion of the voyage impossible, because the intervention of winter weather, which compels the master to lay up his vessel at an intermediate port, only delays the voyage until the opening of navigation in the ensuing season, when it may be resumed and completed. It is also admitted that the rate of seamen's wages, for voyages undertaken late in the fall on our lakes, is much higher than for similar services in the spring. Under these circumstances it seems to me that the court should hold a contract like the one now before us to be made by both parties in view of the contingency that it is liable to terminate; by the closing of navigation from the inclemency of the weather, before the completion of the voyage. It is a contract for the voyage from the port of departure to the port of destination, if it can be completed that season. If the season closes by the setting in of winter weather, so as to make the further prosecution of the voyage unsafe for life or property, then the master must have the right to lay up his vessel at any intermediate port of safety, and to discharge his crew, because to be compelled to pay full wages during the entire winter, and until the completion of the voyage in the spring, might not only consume the entire earnings of the voyage, but even leave the vessel burdened with debt. If the master cannot terminate the contract with his men on some equitable terms when he is compelled to lay up his vessel, he would be tempted to take too great risks in pursuing and attempting to complete the voyage, and thereby endanger not only the lives of his men, but the property in his charge, merely because he was under so heavy an obligation to his men if he must either get them to their place of

destination that fall, or be liable to them for the entire winter. But a master ought not to have the right arbitrarily to lay up his vessel and discharge his men, at a way port, except upon equitable terms to them. From the nature of the case the master must exercise his discretion as to the extent to which he will pursue and attempt the completion of his voyage, and the men, as a rule, must perform their duty by working the ship under his orders until he decides to lay up. To disobey orders and refuse to work the ship would be, under most circumstances, mutiny. But when the master decides to lay up and to exercise his right to terminate the contract, he should be allowed to do so only on condition of making a just and proper provision for the men. He should certainly pay the wages which have been earned at the stipulated rate up to the time of the laying up. of the vessel. In this case I have no doubt that equity required the master to pay the expenses of his men back to the port of departure. Such may not be the rule in all cases, and I do not conceive it necessary in this case to lay down a rule for all cases; possibly cases may occur when it would be more consonant with the rights of all that the master should pay the expenses of the men to the port of destination rather than to the port of departure, especially when the vessel is laid up nearer the port of destination than the port of departure; because if, by the contract, the master had a right to discharge his crew at the port of destination, they could not complain if furnished free transportation to that point. This would leave the men just where they would have been left if the voyage had been completed that fall. Of course the parties can, by their contract, expressly provide for and settle their respective rights in such a contingency as this, and their contract, and not the rule laid down in this case, would then govern. I only intend to decide what the rights and obligations of the parties to this suit are, and other suits coming within the facts of this case.

I am surprised to find there is a great dearth of direct

authority upon the questions involved in this case. The case of *The Lioness*, decided by Judge Treat, of the eastern district of Missouri, and reported in the third volume of the FEDERAL REPORTER, page 922, is analogous in many of its features to this. *The Lioness* was a tow-boat engaged upon the Ohio and Mississippi rivers, her home port being Pittsburgh. Her crew were shipped in the spring, for the season. The boat was laid up by the ice at a small landing about 20 miles below St. Louis. In that case the learned judge allowed the men their wages until the time of their arrival at their home port, as well as their expenses. I do not find any warrant in the authorities cited in that case for the payment of wages, as a rule, until the arrival of the crew at the port of shipment; although that case was undoubtedly rightly decided, in view of its special facts.

In the case of an American vessel sold in a foreign port before the completion of her voyage, the master has a right to discharge his seamen; but he must pay them three months' wages and their expenses home, or make some suitable provision, approved by the American consul at the port where the discharge takes place. But this law affords no criterion or rule for the government of the master in a case like this.

I am, therefore, of opinion that the report and finding of the commissioner in this case should be sustained. The exceptions to the report will be overruled, and a decree entered in conformity with the recommendation of the commissioner, awarding the libellants their wages, and their expenses from Escanaba to Chicago, together with the costs of this suit, to be taxed.